UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

v.

18-CR-138 (JLS) (MJR)

GABRIELLE MCGRADY,

Defendant.

## DECISION AND ORDER

Defendant Gabrielle McGrady is charged in the Third Superseding Indictment with conspiracy to possess with intent to distribute, and to distribute, 5 kilograms or more of a mixture and substance containing cocaine (Count 1), and attempted possession of 5 kilograms or more of a mixture and substance containing cocaine with intent to distribute (Count 2).

On October 4, 2021, McGrady filed a motion asking the Court to: (1) inspect the grand jury minutes related to her to determine whether facts exist to overcome the presumption of regularity; (2) dismiss the Third Superseding Indictment as against her; and (3) conduct a hearing to determine the sufficiency of the Third Superseding Indictment as against her. Dkt. 407. The Government opposed the motion, and McGrady replied. Dkts. 418, 428. The Court addressed the motion with the parties at the October 4, 2021 final pretrial conference and heard argument at the October 15, 2021 final status conference. After hearing argument, the Court denied the motion from the bench, and stated that this written decision would follow.

## DISCUSSION

I.   **Inspection of Grand Jury Minutes**

McGrady first asks the Court to inspect the grand jury minutes to determine whether facts exist to overcome the presumption of regularity that applies to grand jury proceedings. She states that the Government offered perjured testimony to the grand jury, which it failed to correct, and that the testimony was material. *See* Dkt. 407, at 3. McGrady bases this argument on law enforcement witness testimony that relied on location information derived from her cell phone, which later was determined to be incorrect. *See id.* at 4-5, 9-10. In particular, a time-conversion error on the location data led the witness to believe originally—and testify to the grand jury—that McGrady was traveling to a certain location at a similar time to alleged co-conspirators when, after the time-conversion error was discovered, it became clear that McGrady had traveled the route hours earlier. *See id.* at 9-10.

Federal Rule of Criminal Procedure 6(e)(3)(E)(ii) allows the Court to review grand jury minutes. But the Court's power "to inspect . . . grand jury minutes should rarely be exercised." *United States v. Costello*, 119 F. Supp. 159, 160 (S.D.N.Y. 1954). Absent a "showing of particularized need, or a gross and prejudicial irregularity influencing the grand jury, or some similar compelling reason, [a] defendant's motion to have the court inspect the grand jury minutes must be denied." *United States v. Cummings*, 49 F.R.D. 160, 161 (S.D.N.Y. 1969); *see also United States v. Smith*, 105 F. Supp. 3d 255, 261 (W.D.N.Y. 2015) ("'A review of grand jury minutes is rarely permitted without specific factual allegations

2

of government misconduct.'") (quoting *United States v. Torres*, 901 F.2d 205, 233 (2d Cir.1990)).

McGrady cites specific facts here, but those facts do not amount to "government misconduct," or "a gross and prejudicial irregularity influencing the grand jury." *See Cummings*, 49 F.R.D. at 161; *Smith*, 105 F. Supp. 3d at 261. Rather, the facts indicate that the witness testified to the grand jury about the location data as he understood it when the witness testified, and that later—after the grand jury concluded its investigation—the Government and the witness learned about the data interpretation error. *See* Dkt. 407, at 4-5, 9-10; Dkt. 418, at 12-15.[1] Indeed, McGrady recognizes that the Government did not learn that the testimony was incorrect until after the fact. *See* Dkt. 407, at 3 (arguing that the Government did not correct "what [it] *subsequently learned* was false testimony") (emphasis added).

This is not one of the rare situations in which the Court should review the grand jury minutes, and it declines to do so here.[2]

## II.   Dismissal of the Third Superseding Indictment

McGrady also asks the Court to dismiss the Third Superseding Indictment because: (1) a grand jury witness testified falsely, and the Government did not

---

[1] Page references to Dkt. 418 are to the numbering automatically generated by CM/ECF, which appears in the header of each page.

[2] The Court notes that McGrady has the relevant grand jury transcripts, which the Government provided consistent with its discovery obligations in advance of trial. She cited those transcripts extensively in her motion, which the Court has reviewed closely. *See* Dkt. 407, at 4-8.

correct the testimony; (2) irregularities exist in the grand jury proceeding based on the Government's use of hearsay testimony, which resulted in prejudice to her; and (3) as a result, the Third Superseding Indictment does not state sufficient facts as to her to constitute the charged criminal offenses. *See* Dkt. 407, at 1.

### A.   Allegedly False Testimony

Courts "may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988). Dismissal is "not appropriate" where a defendant "has not demonstrated that he [or she] was prejudiced by [the government] actions," either because "the violations 'substantially influenced the grand jury's decision to indict,'" or because there is "'grave doubt that the decision to indict was free from the substantial influence of such violations.'" *United States v. Walters*, 910 F.3d 11, 23 (2d Cir. 2018) (quoting *Bank of Nova Scotia*, 487 U.S. at 256); *see also United States v. Broward*, 594 F.2d 345, 351 (2d Cir. 1979) (reversing dismissal of indictment because defendants "suffered no prejudice by the misconduct that was found to have occurred," there was "no claim that the grand jury . . . was misled in any way," and "there was no finding of widespread or continuous official misconduct of the dimensions necessary to warrant the imposition of the sanction of dismissal").[3]

---

[3] According to the Second Circuit, "it is not clear that the Supreme Court created a stand-alone exception to the prejudice requirement for cases involving systematic and pervasive prosecutorial misconduct." *Walters*, 910 F.3d at 25. McGrady alleges no such misconduct here, so the Court need not address the issue.

Claims that the Government secured an indictment based on perjured testimony implicate due process rights. In particular, "where the government knows that perjured testimony has been given to the grand jury and that this testimony is material to the grand jury's deliberations, due process requires that the prosecutor take such steps as are necessary to correct any possible injustice." *United States v. Guillette*, 547 F.2d 743, 752-53 (2d Cir. 1976). In certain situations, it may be "proper for the prosecutor to return to the grand jury and seek a new indictment untainted by the perjury." *Id.* at 753.

A defendant alleging a due process violation faces a "very heavy burden." *See Walters*, 910 F.3d at 27 (internal quotations and citation omitted). She must "show that the Government's conduct was so outrageous that common notions of fairness and decency would be offended were judicial process invoked to obtain a conviction." *Id.* (internal quotations and citation omitted). In other words, she must establish that the Government's conduct, "standing alone, is so offensive that it shocks the conscience." *Id.* (internal quotations and citation omitted). She also must demonstrate prejudice. *See id.* at 28.

The *Guillette* court concluded that dismissal of the indictment was inappropriate where there was "no evidence" that the witness "actually committed perjury during his grand jury appearance." *Guillette*, 547 F.2d at 753. It "decline[d] to adopt the proposition that grand jury testimony that has merely been thrown open to suspicion by postindictment events is an invalid basis for an indictment" because such a rule "would necessitate independent judicial review of the credibility

5

of grand jury witnesses, an exercise that would seriously infringe upon the traditional independence of the grand jury." *Id.* Accordingly, "where subsequent events merely cast doubt on the credibility of grand jury witnesses, due process does not require the prosecution to notify the grand jury of those events and seek a new indictment." *Id.*

The Supreme Court reached a similar conclusion when presented with a request to dismiss an indictment due to an agent witness's allegedly "misleading and inaccurate summaries to the grand jury." *See Bank of Nova Scotia*, 487 U.S. at 260-61. The Court noted that the challenge amounted to "a challenge to the reliability or competence of the evidence presented to the grand jury," and concluded that "an indictment valid on its face is not subject to such a challenge." *Id.* at 261. Disagreeing with the district court's conclusion that "prosecutors knew the evidence to be false or misleading," the Court recognized that any doubts "the Government may have had . . . about the accuracy of certain aspects of the [evidence]" were "quite different from having knowledge of falsity." *Id.*; *see also United States v. Bari*, 750 F.2d 1169, 1176 (2d Cir. 1984) (stating that dismissal of an indictment "is warranted only where the prosecutor's conduct amounts to a knowing or reckless misleading of the grand jury as to an essential fact"); *United States v. Dyman*, 739 F.2d 762, 768 (2d Cir. 1984) (concluding that where there was no claim "that the prosecutor knowingly withheld evidence negating guilt which, if presented, would reasonably be expected to lead the jury not to indict," the government "put forward enough evidence to establish probable cause that a crime

6

was committed, and that the defendants were reasonably believed to have committed it," which was all the government "was required to do") (internal quotations and citation omitted).

McGrady's argument for dismissal falls short of this standard. Nothing indicates that the witness provided perjured testimony to the grand jury. Instead, the record establishes that the witness testified to what he believed was true about McGrady's location when he testified, which he later learned was a mistake. Because there was no perjured testimony here, the Government could not have had knowledge of such testimony.

Finally, McGrady did not demonstrate that the mistaken testimony was material to the grand jury's decision to indict. Apart from the testimony about McGrady's location, the agent testified about text messages between McGrady and a cooperating witness regarding a co-defendant and a location related to the cocaine conspiracy under investigation. The cooperating witness, herself, also testified.[4] For the same reasons that the mistaken testimony was not material, McGrady did not demonstrate prejudice from it.

McGrady cites no authority to support her argument that the Government was obligated to return to the grand jury—almost two years later, and after the grand jury had concluded its investigation—to correct mistaken testimony after it

---

[4] To further demonstrate that the mistaken testimony was not material, the Government states that the location data (once corrected) continues to support its theory of McGrady's role on the day in question, albeit in a different way. *See* Dkt. 418, at 10, 13.

7

discovered the time-conversion error. The Government's conduct after learning about the error reflects a good-faith effort to address the issue, and is inconsistent with the knowing presentation of perjured testimony required to dismiss an indictment. *See* Dkt. 418, at 12-15. The situation here is precisely one in which courts are not to intervene, and the Court declines to do so.

## B. Hearsay Testimony

Next, McGrady argues that the Government improperly relied on hearsay testimony to obtain the Third Superseding Indictment against her.

"An indictment returned by a legally constituted and unbiased grand jury generally is not subject to attack on the ground that it is based on inadequate or incompetent evidence." *Guillette*, 547 F.2d at 752 (citing *United States v. Calandra*, 414 U.S. 338, 345 (1974), and *Costello v. United States*, 350 U.S. 359, 363 (1956)). Court review of a prosecutor's presentation to the grand jury runs the risk of impermissible review of the quality adequacy of evidence presented to the grand jury. *United States v. Williams*, 504 U.S. 36, 54 (1992) (noting that it "would make little sense . . . to abstain from reviewing the evidentiary support for the grand jury's judgment while scrutinizing the sufficiency of the prosecutor's presentation" because a "complaint about the quality or adequacy of the evidence can always be recast as a complaint that the prosecutor's presentation was 'incomplete' or 'misleading'"). The Supreme Court recognized that "'neither justice nor the concept of a fair trial requires'" such a review of facially valid indictments. *Id.* at 54-55 (quoting *Costello*, 350 U.S. at 364) (internal quotations and alterations omitted).

As a result, courts "decline[] to enforce the hearsay rule in grand jury proceedings.'" *Id.* at 50 (citing *Costello*, 350 U.S. at 364); *see also Bari*, 750 F.2d at 1176 (rejecting argument for dismissal based on prosecutor "reading the April transcript to the July grand jury rather than presenting [the witness] in person," and noting that "there is no *per se* prohibition on" the use of hearsay"). A prosecutor's "use of hearsay testimony before a grand jury raises questions about the validity of an indictment only when [he or she] misleads the grand jury into thinking it is getting first-hand testimony when it really is receiving hearsay," or where "a high probability [exists] that if eyewitness rather than hearsay testimony had been used, the defendant would not have been indicted." *Dyman*, 739 F.2d at 767.

McGrady states, without elaboration, that the Government "presented extensive hearsay and double hearsay speculation" regarding her involvement in the charged criminal conduct, and that such evidence "added a false aura of factual support to the [G]overnment's case and deceived the grand jurors." Dkt. 407, at 12. She cites nothing to suggest that the Government misled the grand jury into thinking that hearsay testimony was first-hand testimony, or that eyewitness testimony would have made it significantly less likely that the grand jury would indict her—nor could she, given the cooperating witness's testimony. The Court declines McGrady's invitation to review the quality and sufficiency of the evidence presented to the grand jury.

### III.  No Hearing is Necessary Here

McGrady asked the Court to conduct a hearing on the issues presented by her motion. But a hearing is not necessary here. *See Walters*, 910 F.3d at 28-29. The parties' submissions demonstrate a lack of disputed factual issues,[5] and the Court has "a sufficient record on which to make its rulings." *Walters*, 910 F.3d at 28. Moreover, McGrady "had a fair opportunity to challenge" the Government's account of the facts—both in a reply submission and at oral argument. *See id.* at 28-29.

### CONCLUSION

For the reasons stated above and on the record at the October 15, 2021 final status conference, the Court denies McGrady's motion to dismiss the indictment (Dkt. 407).

SO ORDERED.

Dated:    October 18, 2021
          Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

---

[5] The recollections of the Government and McGrady differ as to exactly what the Government told McGrady's current counsel about the time-conversion error and when. *See* Dkt. 418, at 12-15, 35-36. The difference in recollections does not affect the Court's decision.